NO. 07-02-0336-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 18, 2003
_____

IN RE S.S.C.,

A Minor
_____

FROM THE 100TH DISTRICT COURT OF DONLEY COUNTY;

NO. 5837; HON. DAVID MCCOY, PRESIDING
_____

***Memorandum Opinion***
_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Cornelia Lashel Calloway (Calloway) appeals from an order terminating the parental relationship between her and her daughter, S.S.C. Fourteen issues are presented to us. Each involves an attack upon the sufficiency of the evidence underlying the trial court's findings and judgment. We affirm that judgment.

*Standard of Review*

The applicable standard of review is explained in *In re C.H.*, 89 S.W.3d 17 (Tex. 2002). Through it, we are told to determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* at 25. Implicit in this standard is our obligation to accord the factfinder that deference

needed for it to fulfill its role. *Id.* at 25-26. Furthermore, if the evidence is of the ilk described, then the decision enjoys factually sufficient evidentiary support. Finally, if the evidence is factually sufficient, then, it is also legally sufficient; this is so because, logically, there cannot be "no evidence" of record if the record nonetheless contains enough evidence to enable the factfinder to reasonably form a firm belief or conviction as to the existence of pivotal facts.

*Application of Standard*

Though the trial court found numerous statutory grounds warranting termination of the parent/child relationship, we need not determine whether each enjoys the requisite amount of evidentiary support. Instead, the decision may be affirmed if the evidence supports the existence of one ground, *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.–San Antonio 2000, no pet.), assuming the State also proves that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1) & (2) (Vernon 2002) (stating that termination may be ordered if the trial court finds, by clear and convincing evidence, the existence of a statutory ground and that termination is in the best interest of the child).

Next, among the many grounds asserted by the State, one permits termination if the parent has had her parent/child relationship terminated with respect to another child based on a finding that the parent's conduct violated paragraph (D) or (E) of §161.001(1) of the Family Code or a substantially equivalent law of another state.[1] TEX. FAM. CODE ANN.

---

[1]Paragraph (D) referred to in the provision allows termination when a parent knowingly placed the child or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child. TEX. FAM. CODE ANN. §161.001(1)(D) (Vernon 2002). Parental rights may be terminated under paragraph (E) if the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. *Id.* §161.001(1)(E).

2

§161.001(1)(M) (Vernon 2002). The trial court found, by clear and convincing evidence, that this ground existed.

To determine whether the finding has the requisite evidentiary support, we turn to the record before us. Therein, we encounter a certified copy of an order (signed on December 6, 1999) 1) terminating Calloway's parental relationship *viz* another of her four children because she violated both paragraphs (D) and (E), and 2) finding that termination was in the best interest of that child. Calloway does not dispute this at bar; indeed, she acknowledges that such a termination has occurred. And, while she alleges that she "was not appointed an attorney and not allowed to appear, and no record was made of the proceeding" which resulted in entry of the December 6th order, she does not argue that the December 6th decree is invalid.[2] Nor did she establish it to be such. Thus, there appears evidence of record from which the trial court could reasonably form a firm belief or conviction that Calloway had her parental rights terminated with respect to another child based on a finding that she violated paragraph (D) or (E) of the Family Code.

Next, the trial court also found that termination was in the best interest of S.S.C. To determine whether that finding has sufficient evidentiary support, we again turn to the record and also consider what have become known as the *Holley* factors. Espoused in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), these factors were mentioned by the Texas Supreme Court as insightful on the issue. They consist of: 1) the desires of the child; 2) the emotional and physical needs of the child now and in the future; 3) the emotional and

---

[2]The December 6th order does not state that she was denied an attorney or opportunity to appear at the termination hearing. It actually says that Calloway "signed an affidavit of relinquishment, was not notified, and did not appear."

physical danger to the child now and in the future; 4) the parental abilities of the individuals seeking custody; 5) the programs available to assist these individuals to promote the best interest of the child; 6) the plans for the child by these individuals or by the agency seeking custody; 7) the stability of the home or proposed placement; 8) the acts or omissions of the parent which may indicate that the existing parent/child relationship is not a proper one; and 9) any excuse for the acts or omissions of the parent. *Id.* at 372. Yet, while the indicia set forth in *Holley* may be helpful in assessing the best interest of the child, we must remember that they are not the exclusive indicia which may be considered. *In re C.H.*, 89 S.W.3d at 27. For instance, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *Id.* at 28. Moreover, one need not prove that each *Holley* factor favors termination. *Id.* All one need do is present enough evidence from which the factfinder can reasonably form a firm conviction or belief that the child's best interest warrants termination.

Next, here we have evidence that Calloway (29 years old at the time of the termination hearing) 1) left S.S.C. in Texas when she moved to California to "get away for a little while," 2) has no job, 3) has no physical reason for being unemployed, 4) had only worked sporadically before leaving for California, 5) returned from California "because [she] had got some papers saying that [she] had to come to court" regarding the State's effort to terminate her relationship with S.S.C. and would not have returned but for receiving those papers, 6) ingested marijuana "'[u]p until four days before" giving birth to S.S.C., 7) continues to use marijuana, 8) drank alcohol while pregnant with S.S.C., 9)

4

placed one of her other children with another person while she went to prison, 10) was previously convicted and incarcerated for aggravated assault (she committed the offense while knowing she was pregnant), 11) was later convicted and incarcerated for forgery when she had three other children, 12) had her parental relationship with these three other children terminated, 13) sporadically attended then stopped attending the counseling offered her by Child Protective Services (CPS) to address the reasons why S.S.C. was removed, 14) failed to attend drug treatment classes, 15) failed to pay any of the child support ($25 per month) as ordered by the court, 16) had not visited or attempted contact with S.S.C. for approximately eight months prior to the termination hearing and prior to that she sporadically missed her scheduled visitation periods, 17) would not talk with S.S.C.'s foster parents about S.S.C. when she did visit, 18) sent no cards or presents to S.S.C. since the child was removed (though she did give the child two blankets, a toy, a sleeper, and a dress at one time or another), 19) would depend upon the financial support of family and friends to provide for S.S.C. in the immediate future, 20) failed to comply with the CPS service plan developed to get her child back, 21) failed to notify her CPS case worker when she moved to and returned from California, 22) failed two of six drug tests administered to her since S.S.C. was removed, 23) consistently failed to contact CPS as required by her service plan, 24) cannot provide S.S.C. "a safe and stable environment," and 25) wants to marry a man who is serving a 25-year prison term and who assaulted her. Other evidence illustrated that S.S.C. 1) was born with and has special medical needs and suffers from seizures, 2) has never lived with Calloway, 3) was born premature and had to stay in the hospital for 17 days after birth, 4) was removed from the custody of Calloway

5

upon release from the hospital on January 30, 2001, 5) has lived with the same foster parents since January of 2001, 6) is happy in her present environment, and 7) needs permanency and stability in "a safe and secure drug free environment . . . where all of her needs can be met." Furthermore, S.S.C.'s foster parents know of her medical needs, are capable of meeting them, and want to adopt her. Finally, while S.S.C. remained in the hospital after birth, Calloway failed to visit her daily, but instead would phone to determine the baby's medical status.

In comparing the foregoing litany of evidence against the *Holley* factors, one could reasonably form a firm conviction or belief that S.S.C. had special physical needs which Calloway could not satisfy, that Calloway lacked the parental ability, skills and desire as well as the financial ability to raise offspring, that though programs were available to assist her in improving her personal and parenting skills she did not take advantage of them, that though S.S.C. needed a stable home environment Calloway could not provide it, and that Calloway's acts or omissions indicate that the existing parent/child relationship was not a proper one. In short, the evidence entitled a factfinder to reasonably form a firm conviction or belief that it was in the best interest of S.S.C. to terminate the parent/child relationship between the two individuals.

Having found that the evidence both legally and factually supports the existence of one statutory ground warranting termination and that termination would be in the child's best interest, we affirm the judgment of the trial court.


Brian Quinn

6

Justice